**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

ALLIED HOME MORTGAGE
CAPITAL CORPORATION                                                                                          PLAINTIFF

v.                                                                                           CIVIL ACTION NO.: 2:06CV161

BLUES ALLEY ESTATES
LIMITED PARTNERSHIP, *et al.*                                                                            DEFENDANTS

## JUDGMENT

The trial of the above-cited case was held on March 17, 2008, without a jury by the undersigned. Allied Home Mortgage Capital Corporation ("Allied") offered as a witness Joe James, manager of Allied's 538 portfolios. Blues Alley Estates Limited Partnership, Derrick Neal, and Superior Development Group, Inc., (collectively known as "Blues Alley" or the "Blues Alley Defendants") offered no witnesses in response thereto, and the court took the case under advisement. Upon notification of the need to reopen the record, this Court held an additional hearing in which David Evans, surveyor of the subject property, testified.

The following constitutes the findings of fact and conclusions of law reached by this court pursuant to Federal Rule of Civil Procedure 52:

*Findings of Fact*

1. Delta Housing Finance issued bonds which were sold to private investors in order to finance a residential subdivision development in Coahoma County, Mississippi, by Blues Alley. T. 52.

2. A United States Department of Agriculture ("USDA") guarantee was issued on those bonds. T. 52. This USDA guarantee is known as a 538 loan. Anytime there is a 538 transaction, there must be a USDA approved lender. T. 51-52. The approved lender is a private lender that acts

on behalf of the government. T. 51-52.

3. Allied is a USDA approved lender. Allied is the USDA approved lender on the Blues Alley Transaction. T. 52.

4. On January 15, 2003, Blues Alley Estates executed a promissory note, loan agreement, and multi-family deed of trust in favor of Allied Home Mortgage Capital Corporation in the amount of $5,371,000. *See* Undisputed Facts, Pretrial Order, January 17, 2008, p. 6.

5. Superior Development Group, Inc., is the general partner of the Blues Alley Estates Limited Partnership and signed the following loan documents on behalf of Blues Alley Estates Limited Partnership: Promissory Note, Corrected Multifamily Deed of Trust, Construction Loan Agreement, Financing Agreement, and Completion Guarantee.

6. Derrick Neal is the Limited Partner in the Blues Alley Estates Limited Partnership.

7. Blues Alley was notified on July 23, 2004, of certain non-monetary delinquencies. *See* Undisputed Facts, Pretrial Order, January 17, 2008, p. 6.

8. On May 15, 2006, Allied sent Blues Alley a notice of default and acceleration of indebtedness. *See* Undisputed Facts, Pretrial Order, January 17, 2008, p. 6.

9. Defendant committed a non-monetary default which has not been cured. *See* Order, March 31, 2006, 2:05cv205 [13].

10. The following amounts are part of the total disbursement on the promissory note to Blues Alley:

    a. $1,701,506.00 of the construction loan was disbursed to Blues Alley. T. 62.

    b. $736,548.00 was the amount of interest paid to bondholders by Allied. T. 62.

    c. $423,827.00 was the cost incurred by Allied to issue the bonds. T. 62.

d. $74,624.00 was the amount of the surety bond fee paid by Allied. T. 63.

e. $72,038.00 was paid to the trustees to manage the construction project account. T. 63.

f. $11,365.00 paid to the USDA to maintain the guaranty. T. 63-64.

g. $485.00 for title work for the transaction. T. 64.

h. $31,250.00 was reimbursed by Derrick Neal to the construction fund for the purchase of insurance. T. 64.

11. The total disbursement on the promissory note totals $2,989,143.00.

12. The default rate of interest of the loan between Allied and Blues Alley is 12.75%. *See* Joe James Affidavit, February 29, 2008 [75]; T. 66; Promissory Note, ¶ 8.

13. After the determination by Judge Pepper that Blues Alley non-monetarily defaulted on their loan obligations, Allied attempted a non-judicial foreclosure. T. 56.

14. Blues Alley then sought a temporary restraining order in Coahoma County Chancery Court to stop that foreclosure based on an error in the description attached to the Deed of Trust. T. 58.

15. The last call of the Deed of Trust description reads: "South 89 degrees 18 degrees West, 610.00 feet to the POINT OF BEGINNING . . ."

16. Allied has not assigned its rights to any other party. *See* Pepper's Order, June 27, 2007, 2:06cv161 [60].

*Conclusions of Law*

a. *Money Damages*

In order to determine the money damages that Allied is owed as a result of Blues Alley's

default, the court relies on the description of damages provided in the loan documents. The definition of the term "Loan Documents" throughout the agreements explains what is to be considered part of the agreement between Allied and Blues Alley. The Deed of Trust, executed on January 15, 2003, provides that the term "Loan Documents" means the Promissory Note, the Deed of Trust, "all guaranties, all indemnity agreements, all Collateral Agreements, O&M Programs, and any other documents now or in the future executed by Borrower, any guarantor or any other person in connection with the loan evidenced by the Note." Accordingly, the Blues Alley Estates loan transaction involves five (5) agreements and over one hundred fifty (150) pages of conditions and guarantees. *See Promissory Note, Corrected Multi-Family Deed of Trust, Financing Agreement, Construction Loan Agreement, and Completion Agreement.*

Throughout these extensive documents, the following clauses concern the damages associated with default by the Borrower, or Blues Alley:

1. *Deed of Trust*, ¶ 43: "At any time during the existence of an Event of Default, . . . Lender shall be entitled to collect all costs and expenses incurred in pursuing [the power of sale remedy], including attorneys' fees, costs of documentary evidence, abstracts and title reports."

2. *Construction Loan Agreement*, ¶ 8: "If any one or more of the following events ("Events of Default" or singularly "Event of Default") shall occur and be continuing, the entire unpaid balance of the principal of and interest on the Note and all other obligations and Indebtedness of Borrower to the Lender arising hereunder and under the other Loan Documents will . . . immediately become due and payable without notice."

¶ 9(h): "Borrower shall indemnify Lender against, and hold Lender harmless from, all loss, liabilities, damages, claims, and reasonable costs and expenses (including reasonable attorneys' fees

4

and disbursements) suffered or incurred by Lender arising out of, resulting from or in any manner connected with, the Loan Documents, or any transaction related hereto or thereto, except any such loss arising solely from Lender's own gross negligence or willful misconduct."

¶ 9(u): "In the event that suit be brought hereon, or an attorney be employed or expenses be incurred to compel payment of any amounts owing under the Note or any portion of the Indebtedness evidenced hereby or in the Loan Documents, Borrower promises to pay all such reasonable attorneys' fees, costs and expenses, all as actually incurred by Lender as a result thereof, and including without limitation reasonable attorneys' fees, costs and expenses . . . incurred as a result of the Lenders' exercising its rights to cure any Event of Default."

3. *Completion Guarantee*, ¶ 1(I): "If an Event of Default (as defined in the Loan Agreement) should occur . . . Guarantor shall, upon demand of the Lender . . . pay the Lender all other costs and damages it actually incurs as a result of the failure by Debtor, the Guarantor or any other party to pay and/or perform any part of the Guaranteed Obligations, including without limitation, all reasonable attorneys' fees and all other costs it incurs in enforcing the performance or the payment of the Guaranteed Obligations, with interest thereon at the highest rate of interest (the Default Rate) then payable under the documents or instruments evidencing the Loan."

Accordingly, Allied is entitled to the unpaid principal and interest on the Note, reasonable attorneys' fees incurred as a result of Blues Alley's default, costs and expenses resulting from the pursuit of the power of sale provision, and damages incurred as a result of the default.

The following provisions concern the interest rate and its accrual upon default:

1. *Promissory Note*, ¶ 8, "Default Rate" : "So long as . . . (b) any other Event of Default has occurred and is continuing, interest under this Note shall accrue on the unpaid principal balance from

the earlier of the due date of the first unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at a rate . . . of five percent above the rate stated in the first paragraph of this Note [7.75%] . . ."

  \*  \*  \*

"Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable amount, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan."

  2. *Deed of Trust*, ¶ 12(b): "Any amounts disbursed by Lender . . . shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the 'Default Rate', as defined in this Note."

  Accordingly, 12.75% interest accrues on the unpaid principal loan disbursed prior to Blues Alley's default from the date of last disbursement, April 22, 2005. Further, the interest accrued until May 13, 2008, the date of the Court-ordered teleconference. Interest shall not accrue after that date in fairness to the Defendants because the Plaintiff failed to discover an additional error in the deed of trust prior to that date.

  It is ordered that Allied Home Mortgage Capital Corporation recover from the Defendant Blues Alley Estates Limited Partnership and Superior Development Group, Inc., as the general partner of Blues Alley Estates Limited Partnership, the amount of $4,435,163.84. This amount is inclusive of the following amounts:

| | |
|---|---:|
| Principal Loan Disbursed prior to Default: | $2,989,143.00 |
| Interest from April 22, 2005 until May 13, 2008, at the default rate of 12.75%: | $1,164,229.95 |
| Attorneys' Fees | $179,954.72 |
| Supplemental Attorneys' Fees | $101,836.17 |
| **Total:** | **$ 4,435,163.84** |

*b. Individual Liability of Derrick Neal*

As noted above, the Loan Documents upon which the Blues Alley Transaction was premised on includes the Promissory Note, Deed of Trust, Financing Agreement, Construction Loan Agreement and Completion Guarantee. The Construction Loan Agreement contained the full amount of the loan to Blues Alley, $5,371,000, and noted that the loan was entered into in accordance with "the terms of a promissory note ("Note"), deed of trust ("Mortgage"), this Agreement and such other security documents ("Loan Documents"), as are described herein." Moreover, that Agreement provided for the imposition of "reasonable attorneys' fees, costs and expenses" incurred in any legal action brought to compel payment in the event of default. The Agreement also notes that the "obligations of Borrowers hereunder are joint and several obligations, and the Lender may look to any or all of the Borrowers for the performance of any or all such obligations."

Derrick Neal signed the Construction Loan Agreement as "GUARANTOR" and "Individually." Therefore, he is held to have personally guaranteed the Blues Alley loan, as evidenced by the Promissory Note, and the attendant fees incurred as a result of their default.

7

Resultantly, Derrick Neal has personally guaranteed the amount due under the Loan Documents, interest that has accrued thereon, and attorneys' fees and costs as a result of the Blues Alley default.

*c. Reformation*

Plaintiff also requests that the court judicially reform the incorrect description in the loan documents, specifically the deed of trust. In conjunction with the loan documents, the parties signed a Document Correction Agreement in which Blues Alley Estates promised to correct any misstated or inaccurate information in any loan documentation upon request by Allied. At the trial of this matter, Joe James, Allied's 538 portfolio manager, testified that Allied had not requested that Blues Alley correct the deed of trust themselves due to the manner in which they fought foreclosure. Specifically, James recounted Allied's efforts at non-judicial and judicial foreclosure with each of the attempted foreclosures being thwarted by Blues Alley, Superior Development Group, or Derrick Neal personally. As such, Allied determined that any request to reform the incorrect deed would be futile.

The Judiciary Act of 1789 conferred on the federal courts jurisdiction over "all suits . . . in equity." 1 Stat. 78. The United States Supreme Court has long since held that the jurisdiction thus conferred "is an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries." Atlas Life Ins. Co. v. W.I. Southern, Inc., 306 U.S. 563, 568, 59 S. Ct. 657, 83 L. Ed. 987 (1939). We must ask, therefore, whether the relief the Plaintiffs requested here was traditionally accorded by courts of equity.

A court of chancery will reform a mistake in a deed when the mistake is made out to the satisfaction of the Court. The rule, as laid down by Chancellor Kent is, "does [the evidence] satisfy

8

the mind of the court." Gillespie v. Moon, 2 Johns. Ch 597 (N.Y. 1817); accord Hyde v. Warren, 46 Miss. 13, 28 (1871). In Gillespie v. Moon, the chancellor reviewed the authorities, both English and American, and clearly defined the jurisdiction of the chancery court. He noted that courts of chancery in England had "jurisdiction to relieve, in respect of a plain mistake in contracts in writing, as well as against frauds in contracts." Citing Henkle v. The Royal Exchange Assurance Company, 1 Vesey, 317.

Accordingly, this court has jurisdiction to reform a deed of trust where a mistake has been made in the legal description of the property attached. The Court finds that such is the case here. Plaintiff has been prevented from non-judicial foreclosure of the property on which the Loan Documents were based due to a mistake in the legal description. That description contained the word "degrees" instead of "minutes" in its last call. Further, Plaintiff notified the court after the trial on this matter that an additional error had been found in the property description attached to the deed of trust. The second error was also in the last call of the property. The erroneous description mentioned the direction "West" instead of "East."

The Court reopened the record to permit the testimony of David Evans III, surveyor and civil engineer hired by Blues Alley Estates L.P. to perform the engineering and survey work on the project at issue here. Evans testified that the second mistake found by Allied was, in fact, his fault, and that regardless of the two mistakes, the exact property would be easily identified due to the fact that he referenced the "Point of Beginning" after the faulty descriptors. Thus, the surveyor noted, the mistakes in the property description were surplusage because even if ignored or omitted, the language in the last call makes a complete description.

The deed is hereby reformed to reflect the intent of the parties and shall be noted as

conveying the property as noted below:

LEGAL DESCRIPTION

BLUES ALLEY ESTATES SUBDIVISION

Commencing at the Northeast corner of Section 19, Township 27 North, Range 3 West, Coahoma County, Mississippi, said point being the intersection of the Simmons Road and the Little Simmons Road in said Coahoma County; thence

South 0 degrees 42 minutes West along the center of said Little Simmons Road, 874.4 feet to the POINT OF BEGINNING of the land herein described; thence

South 0 degrees 42 minutes West along the center of said Little Simmons Road, 1482.34 feet to a point; said point being in the center of said road and East of a drainage ditch; thence

South 83 degrees 07 minutes West along the center of said ditch, 615.38 feet to a point; thence

North 0 degrees 42 minutes East, 1563.57 feet to a point; thence

South 89 degrees 18 minutes East, 610.00 feet to the POINT OF BEGINNING, containing 21.33 acres and all being in the Northeast Quarter of Section 19, Township 27 North, Range 3 West, Coahoma County, Mississippi

d. *Foreclosure*

In an attempt to preserve resources and promote judicial economy, this Court will not judicially foreclose the Blues Alley Estates property yet. Allied is granted ninety (90) days to effectuate a non-judicial foreclosure. If Allied's effort to non-judicially foreclose the property is hindered, this Court retains jurisdiction to review the proceedings and enforce a judicial foreclosure, if necessary.

*Conclusion*

Accordingly, it is hereby ORDERED and ADJUDGED that Blues Alley Estates Limited Partnership, P.A., Superior Development Group, Inc., and Derrick Neal individually, owe to Allied

Home Mortgage Capital Corporation the sum of $ 4,435,163.84.

FURTHER, it is hereby ORDERED and ADJUDGED that the Legal Description attached to the Corrected Multifamily Deed of Trust is reformed to read as follows:

LEGAL DESCRIPTION

BLUES ALLEY ESTATES SUBDIVISION

Commencing at the Northeast corner of Section 19, Township 27 North, Range 3 West, Coahoma County, Mississippi, said point being the intersection of the Simmons Road and the Little Simmons Road in said Coahoma County; thence

South 0 degrees 42 minutes West along the center of said Little Simmons Road, 874.4 feet to the POINT OF BEGINNING of the land herein described; thence

South 0 degrees 42 minutes West along the center of said Little Simmons Road, 1482.34 feet to a point; said point being in the center of said road and East of a drainage ditch; thence

South 83 degrees 07 minutes West along the center of said ditch, 615.38 feet to a point; thence

North 0 degrees 42 minutes East, 1563.57 feet to a point; thence

South 89 degrees 18 minutes East, 610.00 feet to the POINT OF BEGINNING, containing 21.33 acres and all being in the Northeast Quarter of Section 19, Township 27 North, Range 3 West, Coahoma County, Mississippi

The parties are given a ninety (90) day window from the date of this Order to foreclose non-judicially the property listed above.

SO ORDERED, this the __26th__ day of June, 2008.

                                                     **/s/ Sharion Aycock**
                                                    **U.S. DISTRICT JUDGE**